IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER CALDWELL, : | |
| : | CIVIL ACTION |
| **Plaintiff,** : | |
| : | |
| v. : | |
| : | NO. 22-2072 |
| PENNSYLVANIA DEPARTMENT OF : | |
| CORRECTIONS, <u>et al.</u> : | |
| : | |
| **Defendants.** : | |

<u>MEMORANDUM OPINION</u>

Goldberg, J.                                                                                                          May 14, 2025

**I.     FACTUAL AND PROCEDURAL HISTORY[1]**

Plaintiff, acting *pro se*, alleges that, on March 23, 2020, while housed in the State Correctional Institution at Phoenix, he was denied proper accommodations for his back problems. Specifically, Plaintiff was assigned to a top bunk. (Def.'s Statement of Undisputed Material Facts ("UMF") at ¶ 11.) He informed Defendant Sgt. Matasavage[2] that he has sciatica and knee issues and requested a bottom

---

[1] The following facts are derived from the evidence submitted by the parties. Where there is conflicting evidence about a particular fact, Federal Rule of Civil Procedure 56 requires that I view such evidence in the light most favorable to Plaintiff.[1] Under my policies and procedures, "[t]he papers opposing a motion for summary judgment shall include as a separate exhibit a short and concise statement . . . [that] responds to the numbered paragraphs set forth in the moving party's Statement of Undisputed Facts." Policies and Procedures at 8–9, https://www.paed.uscourts.gov/judges-info/district-court-judges/mitchell-s-goldberg. Failure to dispute facts will result in those facts being deemed undisputed. <u>Id.</u>, see also Fed. R. Civ. Pro. 56(e). I will grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. Fed. R. Civ. Pro. 56(e).
    To the extent a statement is undisputed by the parties, I will cite only to the parties' submissions. If a statement is disputed and the dispute can be easily resolved by referencing the exhibits, I will cite the supporting exhibits. If a statement is disputed, but the dispute cannot be resolved by reference to the exhibits, I will note the dispute. I will not rely on any statement of fact that is unsupported by reference to a specific exhibit.
[2] The Amended Complaint and other filings submitted by Plaintiff refer to this Defendant by the name "Matescivich;" however, I will refer to him by the spelling he provided through his filings.

1

bunk. (Id. at ¶¶ 12–13.) Defendant Matasavage rejected Plaintiff's request and informed him that he was not ordered to be on bottom bunk status. (Id. at ¶¶ 13–15.)

On March 24, 2020, Plaintiff requested that Defendant Kelly, who is not a party to the current motion, assign him bottom bunk status. (Id. at ¶ 16.) Defendant Kelly denied this request. (Pl's Statement of Disputed Factual Issues ("DSF") at ¶ 17.)

After being denied bottom bunk status, Plaintiff attempted to climb onto the top bunk and pulled his lower back, aggravating his sciatica and falling to the floor. (UMF at ¶ 17.) He traveled to the infirmary, where medical staff tended to him. (Id. at ¶ 20.) At this time, medical staff ordered bottom bunk status, and Plaintiff returned to his assigned unit. (Id. at ¶¶ 20–21.) Medical Staff's notes indicate that this visit occurred around 7:35. (Id. at ¶ 20.)

When Plaintiff returned to his unit, he reported that he was medically ordered to have a bottom bunk. (Id. at ¶ 21.) The unit officer, Defendant Matasavage, confirmed this report but informed Plaintiff that he did not have a bottom bunk available on the entire unit and that Plaintiff could sleep on the floor. (Id. at ¶ 21.) Plaintiff then said he could not sleep on the floor and, according to Defendants, asked to be sent to another unit or the "hole." (Id. at ¶ 21.) Plaintiff disputes that he ever asked to be sent to the "hole." (DSF at ¶8.) Defendant Matasavage had Plaintiff pack his belongings to be taken to the hole. (UMF at ¶ 21.)

Plaintiff then spoke with Defendant Lt. Patterson. (Id. at ¶ 30). Patterson told Plaintiff, that he could not be moved to a bottom bunk. (DSF at ¶¶ 15.) Plaintiff was placed "in the hole" and was served with a misconduct report. (Id. at ¶¶ 5-6.) The misconduct report appears to have been signed by Defendants Matasavage and Taylor. (Id. at Ex. A.) That report indicated that Matasavage "told inmate Caldwell that [he] could not move him from his cell tonight that he had to stay in his assigned cell and bed[,] inmate Caldwell then said take me to the Hole." (Id.)  Under "Misconduct Charge or Other Action," the report states, "Class # 35 – Refusing to obey an order." (Id.) Included in the report was Defendant Taylor's review that "misconduct not approp[r]iate for informal resolution[,] inmate refused

2

to move[,] inmate placed in pre-hearing confinement." (Id.) That report stated that a hearing was scheduled for March 26, 2020. (Id.)

The next day, March 25, 2020, Plaintiff had a misconduct hearing and was found not guilty. (UMF at ¶ 25.) That day, he was released from the hole and given his own cell with a bottom bunk. (Id. at ¶ 26.)

Plaintiff received a letter dated March 26, 2024, that informed him that Executive Deputy Secretary Bickell approved him for Code Z status on March 24, 2024. (Id. at ¶ 27.) Plaintiff appears to claim that this approval came prior to his March 24 fall, (DSF at ¶¶ 3, 7, 22.), however the letter does not state the time Plaintiff was approved. (Id. at Ex. B.)

On April 3, 2020, Plaintiff filed a grievance concerning his denial of a bottom bunk. (UMF at ¶ 32.) Defendant Major Gina Clark, with the approval of Defendant Orlando, denied Plaintiff's grievance on April 20, 2020. (Id. at ¶ 34.) Plaintiff appealed Defendant Clark's denial to Defendant Superintendent Sorber. (Id. at ¶ 35.) That appeal was denied on May 5, 2020. (Id.) Plaintiff appealed Defendant Sorber's denial to Defendants Varner. (Id. at ¶¶ 35–36.) That appeal was denied on July 10, 2020 by Defendant Moore. (Id. at ¶ 36.)

On March 8, 2022, Plaintiff filed a Complaint in the Pennsylvania Court of Common Pleas for Montgomery County, setting forth claims under 42 U.S.C. § 1983 against Defendants Pennsylvania Department of Corrections, Chief Grievance Coordinator Keri Moore, Chief Grievance Coordinator Dorina Varner, Superintendent at S.C.I. Phoenix K. Jamie Sorber, Major Gina Clark, Facility Grievance Coordinator Gina Orlando, ex-Unit Manager at S.C.I. Phoenix Gerard Kelly, Correctional Officer Lt. M.T. Taylor, Correctional Officer Lt. Patterson, and Correctional Officer Sgt. Matasavage. (ECF No. 1.) On May 26, 2022, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1331. (Id.)

On January 13, 2023, I granted Defendants' partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and dismissed with prejudice all claims against the Pennsylvania Department

of Corrections and against the individual Defendants in their official capacities. (ECF No. 20.) Subsequently, I dismissed all claims against Defendants Moore and Varner without prejudice and allowed Plaintiff to file an Amended Complaint. (ECF No. 33.) On December 15, 2023, Plaintiff filed the operable Amended Complaint renaming Defendants Moore, Varner, Sorber, Clark, Orlando, Kelly, Taylor, Patterson, and Matasavage. (ECF No. 36.) All defendants, except Defendant Kelly, who was never served, filed their Joint Answer to the Amended Complaint on February 16, 2024. (ECF No. 38.) On September 23, 2024, these defendants moved for Summary Judgment.

**II.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. The court should state the reasons for granting or denying the motion on the record.

Fed. R. Civ. P. 56(a). "Through summary adjudication, the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." Capitol Presort Servs., LLC v. XL Health Corp., 175 F. Supp. 3d 430, 433 (M.D. Pa. 2016). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id.

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). Once the moving party satisfies its burden, the non-moving party must, in rebuttal, present sufficient evidence of a genuine issue. Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015). The court must then resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana

4

v. Kmart Corp, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment is appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252. Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Twp. of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993). Moreover, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 241 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

"[O]n a motion for summary judgment, a pro se plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." Edwards v. Rice-Smith, 606 F. Supp. 3d 151, 154 (E.D. Pa. 2022) (quoting Dawson v. Cook, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017)). "The party opposing summary judgment, whether *pro se* or counseled, must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial." Id. (quoting Watson v. Philadelphia Hous. Auth., 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009)).

**III.    DISCUSSION**

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

To establish a claim under Section 1983, a plaintiff must demonstrate, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42,

5

48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). As a preliminary matter, I note that all defendants were acting under color of state law, a point the defendants do not dispute. However, viewing the evidence in the light most favorable to Plaintiff, he has not established a violation of his constitutional rights by any defendant.

**A. No personal involvement of Defendants Moore, Varner, Sorber, Orlando, and Clark**

Defendants Moore, Varner, Sorber, Orlando, and Clark must be dismissed because there is no evidence they had any personal involvement in the alleged violations. A plaintiff must plead a defendant's personal involvement in the alleged deprivation of his constitutional right. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Thus, each defendant can be held liable only for his or her own conduct. See Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016). The doctrine of respondent superior, which makes an employer automatically responsible for the wrongdoing of employees, does not apply under § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Rather, a supervisor may be personally liable only "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010) (quotations omitted); see also Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quotation omitted) (emphasis in original)).

Merely naming a defendant in a Complaint without any allegations as to how he or she was personally involved in the alleged violation of rights is insufficient to state a claim. See Autery v. Moore, No. 22-cv-4015, 2023 WL 2390670, at *5 (E.D. Pa. Mar. 7, 2023). Moreover, the collective use of the word "Defendants" without attributing specific actions to specific defendants fails to adequately plead individual causes of action under § 1983. Lawal v. McDonald, 546 F. App'x 107, 113 (3d Cir. 2014).

6

Here, the Amended Complaint mentions Defendants Moore, Varner, Sorber, Orlando, and Clark only for their role in reviewing Plaintiff's grievances against other defendants. Plaintiff initiated the appeals process after the alleged constitutional violations had occurred and after Plaintiff had received a bottom bunk. As such, there is no basis for a reasonable juror to conclude that Defendants Moore, Varner, Sorber, Orlando, and Clark even knew about the alleged violations, let alone participated in, directed, or acquiesced to them. Absent any basis for imposing individual § 1983 liability, the claims against these Defendants must be dismissed.

### B. No Constitutional Violation

Additionally, Defendants Matasavage, Taylor, and Patterson must be dismissed because viewing the evidence in the light most favorable to Plaintiff, he cannot establish a violation of his constitutional or federal rights. To establish a Section 1983 claim, a plaintiff must show conduct that violated a right, privilege, or immunity secured by the Constitution or laws of the United States. Nicini v Morra, 212 F.3d 798, 806 (3d Cir. 2000). Plaintiff argues that Defendants violated his 1st, 6th, 8th, and 14th Amendment rights by: (1) failing to provide him with proper medical care, (2) throwing him "in the hole" when he received a medical order to be placed in a bottom bunk, and (3) writing "a bogus misconduct report . . . to justify throwing [him] in the hole." (Am. Compl. ¶ 51.)

#### *1. Eighth Amendment*

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments: they cannot be 'cruel and unusual.'" Rhodes v. Chapman, 452 U.S. 337, 345 (1981). Prison officials have a duty under the Eighth Amendment to "provide humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Thus, to prevail on a "conditions of confinement" claim, an inmate must show that the deprivation is "objectively sufficiently serious" and that the prison official subjectively acted with deliberate indifference to inmate health or safety. Id. at 834. Deliberate indifference is something more than mere negligence but something less than acts or

7

omissions purposely designed to cause harm. Id. at 835; Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

### i. Pre-Fall Violation

Prior to Plaintiff's visit to the infirmary, he complained about his "sciatica and knee issues," and requested he be placed in a bottom bunk. There is no evidence that, at that time, any medical staff indicated that he required this form of treatment. While Plaintiff alleges that he was given a bottom bunk status on March 24, 2020, "before he was injured," there is no evidence to support this. Plaintiff points only to the fact that he was "approved for [bottom bunk status] by [Executive Deputy Secretary] Bickell on March 24, 2020." (Am. Compl. Ex. A.) However, it is undisputed that Plaintiff's visit to the infirmary took place on March 24, 2020, and Plaintiff acknowledges that he was placed on bottom bunk status as a result of this visit. Importantly, this visit took place after Plaintiff's fall. There is no evidence to suggest that Bickell, a non-medical person, ordered bottom-bunk status independent from Plaintiff's visit to the infirmary, and even if he did, there is no evidence that Bickell placed this order prior to Plaintiff's fall.

As such, Plaintiff would be able to make out a claim of deliberate indifference on the part of Defendant Matasavage prior to the infirmary visit only if his medical need was so serious that a layperson would easily recognize the necessity for a doctor's attention. Generally, non-medical staff, like Matasavage, will be justified in believing that the treatment provided by medical staff, including the lack of a specific type of treatment, is appropriate. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [] will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id. Simply informing guards of a preexisting condition and requesting bottom bunk status, where the prisoner has no file notation indicating the need for such status, is insufficient to establish deliberate indifference. See Harris v. Targot, No. 3:16-cv-923, 2018 WL 4006786, *6 (M.D. Pa. August 22, 2018) (holding that, "[b]ased on the lack of documentation indicating that plaintiff should be assigned on the bottom tier with a bottom bunk . . . the record reflects that medical staff at SCI-Camp Hill did not inform defendants . . . nor did they provide [plaintiff] with a medical slip indicating the change in status," and, therefore, were not culpable pursuant to the Eighth Amendment); see also Price v. Williams, No. 1:18-cv-00583, 2020 WL 3172757, *5 (M.D. Pa. June 15, 2020) (citing Matthews, 613 F. Appx. 163, 170 (3d Cir. 2015) (finding that when prison officials did not have a medical directive from medical staff for a bottom-tier bunk for an inmate, they could not be charged with a sufficiently culpable state of mind, holding that, "to the extent that Plaintiff faults [prison officials] for delaying his assignment to a cell on the bottom-tier, there is no evidence before the Court suggesting that [prison officials] could unilaterally make the determination that such an accommodation was warranted.") Additionally, the use of a cane does not, without more, demonstrate that a prison guard was deliberately indifferent to a serious risk of harm. Spillman v. Kollman, Civil No. 3:18-CV-1568, 2019 WL 4930141 at *5 (M.D. Pa. Oct. 7, 2019) (noting the use of crutches in a general population setting, even by an inmate housed on an upper tier, does not pose a substantial risk of serious harm to an inmate's health or safety).

9

Viewing the evidence in the light most favorable to Plaintiff, he has not established that Defendant Matasavage was deliberately indifferent to an excessive risk to Plaintiff's health or safety. Plaintiff simply informed Defendant Matasavage of a preexisting condition, which is insufficient to establish deliberate indifference. Additionally, Plaintiff had previously visited the medical staff, which designated him to a lower bunk from May 29, 2018 to May 29, 2019. Defendant Matasavage was justified in relying on the fact that medical staff were aware of Plaintiff's medical history and did not order bottom-bunk status. (MSJ at Ex. 3.)

### ii. Post-Fall Violation

Additionally, Plaintiff alleges that Defendants Matasavage, Patterson, and Taylor intentionally interfered with his prescribed medical treatment when they "did not give the Plaintiff a bottom bunk as prescribed and threw the Plaintiff in the Hole instead." (Pl.'s Resp. 9.) However, Defendants did not delay or prevent Plaintiff's medical treatment by placing him in the restrictive housing unit because Plaintiff received a bottom bunk while in the restrictive housing unit. While Plaintiff may have preferred to stay in the general population, "an inmate has no constitutional right to any particular custody classification." Quijada v. Bledso, No. 08-2022, 2011 WL 1303224, at *9 (M.D. Pa. Mar. 31, 2011) ("A transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."). There is no evidence that the conditions in the restrictive housing unit were constitutionally defective under the Eighth Amendment. As such, Plaintiff has failed to establish that his Eighth Amendment rights were violated.

### 2. First Amendment

Plaintiff also claims that Defendants' true intention in placing him in the restrictive housing unit and filing a falsified misconduct report was to retaliate against him for attempting to enforce his medical diagnosis.

"To prevail on a § 1983 First Amendment retaliation claim, the plaintiff must prove that (1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link [existed] between the constitutionally protected conduct and the retaliatory action." Palardy v. Twp. of Millburn, 906 F.3d 76, 80-81 (3d Cir. 2018).

Plaintiff has not provided evidence that he engaged in protected activity, which resulted in him being placed in the restrictive housing unit. The only protective activity that Plaintiff alleges he engaged in was the filing of grievances. Importantly, these grievances were filed after he was given a bottom bunk in the general population. As such, even if a juror found that Plaintiff suffered an adverse action, there is no evidence from which they could conclude that this action resulted from Plaintiff's participation in protected activity.

### 3. Fourteenth Amendment

#### i. Procedural Due Process

The Fourteenth Amendment of the Constitution forbids a state from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend XIV, § 1. When a plaintiff sues under 42 U.S.C. § 1983 for a state actor's failure to provide procedural due process, the court employs the "familiar two-stage analysis," inquiring (1) whether "the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property;'" and (2) whether the procedures available provided the plaintiff with "due process of law." Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984).

"Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." Thomas v. McCoy, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam). The Supreme Court has explained that "an inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official

charged with deciding whether to transfer him to administrative segregation. . . . [s]o long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied. Steele v. Cicchi, 855 F.3d 494, 507 (3d Cir. 2017) (quoting Hewitt, 459 U.S. at 474, 476). This informal review must take place "within a reasonable time following an inmate's transfer." Id. (quoting Hewitt, 459 U.S. at 476 n.8).

According to Plaintiff, he was placed in restrictive housing sometime after 8:50 PM on March 24, 2020. (DSF at ¶ 30.) His misconduct report put him on notice of the reasons for his placement in restrictive housing, informed him of his hearing time, and gave him the opportunity to provide his version of events. (Am. Compl. Ex. B.) Plaintiff received his hearing less than 12 hours after his transfer. (Am. Compl. Ex. C.) During the hearing, the Plaintiff was found not guilty and released from the restrictive housing unit. In sum, Plaintiff was given notice and a chance to be heard within a reasonable time following his transfer, and there is no genuine dispute as to Plaintiff's procedural due process rights being violated.

### i. Substantive Due Process

"[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."; See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010); see also Whitney v. Albers, 475 U.S. 312, 327 (1986) (holding that a prisoner's allegation of cruel and usual punishment is properly made under the Eighth Amendment and, therefore, prisoner's joint claim under Fourteenth Amendment must be dismissed).

Plaintiff's Amended Complaint alleges a deliberate indifference to medical needs, which is addressed through the Eighth Amendment, and retaliation, which is addressed through the First

Amendment. The plaintiff has not alleged any substantive due process rights separate from those addressed above, and as such, those claims will be denied.

### ii. Equal Protection

Plaintiff also alleges that Defendants violated his rights under the Equal Protection Clause. The United States Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (internal citations omitted). A plaintiff asserting a "class of one" claim "must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008). Notably, an equal protection claim is not "a device to dilute the stringent requirements needed to show a substantive due process violation." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 287 (3d Cir. 2004).

Here, Plaintiff's Amended Complaint merely asserts a violation of the Equal Protection Clause without any explanation for the basis for that claim. Plaintiff fails to flesh this claim out in response to Defendants' Motion for Summary Judgment. Absent any evidence that a similarly-situated prisoner was treated better or differently than Plaintiff, summary judgment is appropriate as to Plaintiff's Equal Protection Claims.

### *4. Sixth Amendment*

Plaintiff claims that Defendants violated his Sixth Amendment rights. The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and

> district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const., art. VI.

While Plaintiff claims to be bringing a claim under the Sixth Amendment, there is no evidence related to a Sixth Amendment violation. As such, Defendants are entitled to a Summary Judgment on this issue.

### C. State Tort Law as to all defendants

Finally, Defendants move for summary judgment to the extent the Plaintiff alleges state law violations. Any such claim is barred as "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 42 Pa. Cons. Stat. § 2310.

Immunity has been waived only for negligent actions that fall within one of the enumerated exceptions set out by statute. See Pa. Cons. Stat. § 8522. These exceptions are limited to: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids or vaccines; and, (10) sexual abuse. 42 Pa. Cont. Stat. § 8522(b)(1)-(10). None of the alleged conduct falls within the medical-professional exception, as no named defendants are medical personnel. Maulsby v. Ephrain, 2023 WL 3997959, *2 (E.D. Pa. June 14, 2023) ("[The medical-professional] exception applies only to negligent acts of medical personnel . . . ."). Nor does any other exception to state sovereign immunity apply to Defendant's conduct.

Plaintiff has not identified any waiver of sovereign immunity that would be applicable to this situation. As such Defendants are immune from Plaintiff's allegations that their conduct violated state law.

An appropriate order follows.